**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 08-1193

GERARD CULLEN, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 10, 2010                                    Decided August 13, 2010)

*Landon Overby,* with Robert V. Chisholm, both of Providence, Rhode Island, were on the brief for the appellant.

*Michael Carr,* with *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Leslie C. Rogall*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, MOORMAN, and DAVIS, *Judges*.

HAGEL, *Judge*:   Gerard Cullen appeals through counsel a February 27, 2008, Board of Veterans' Appeals (Board) decision denying entitlement to increased disability ratings for (1) residuals of a shrapnel wound to the right shoulder and right side of back, and (2) degenerative joint disease of the thoracic spine, each currently rated 20% disabling.  The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review the February 2008 Board decision.

This matter was referred to panel to determine whether a claimant may be entitled to more than one disability rating for the same condition under the same diagnostic code.  We hold that he may not.  Because, however, the Board failed to provide an adequate statement of its reasons or bases for concluding that Mr. Cullen was not entitled to an increased disability rating for his thoracic spine condition due to additional limitations due to pain, weakness, or fatigue; and because the Board's reasons or bases for its denial of entitlement to an increased disability rating for the residuals of a shrapnel wound were also inadequate, the Court will vacate the February 2008 Board decision

and remand the matters for further development, if necessary, and readjudication consistent with this decision.

## I. FACTS

Mr. Cullen served on active duty in the U.S. Army from June 1966 to September 1968, including service in Vietnam. In March 2003, he sought increased disability ratings for residuals of a right shoulder shrapnel wound and for degenerative joint disease of the thoracic spine, each of which had been rated 10% disabling.

In October 2004, Mr. Cullen underwent a VA muscles examination in connection with both of his claims. With respect to Mr. Cullen's right shoulder and right side of his back, the examiner reported:

> The veteran has a limitation of the flexion and extension of the right shoulder to 60 degrees and 30 degrees. The abduction is limited to 120 degrees on the right shoulder. Internal rotation 55 degrees, external rotation limited to 25 degrees. The veteran can actively and passively move the joint. The veteran cannot move the joint through gravity. The joint function of the right shoulder is limited by pain, fatigue, weakness, and lack of endurance following repetitive use and also during the flare-up.

Record (R.) at 241.[1] Regarding Mr. Cullen's thoracic spine condition, the examiner reported:

> The veteran has a loss of lumbar lordosis, and there is paravertebral muscle spasm of the T4, T5, and T6 area. Forward flexion is restricted to 70 degrees with pain. Backward extension he can do to only 20 degrees with pain. Left lateral flexion produces pain at 20 degrees. Right lateral flexion produces pain at 15 degrees. The right lateral rotation to the right and the left is 20 degrees with pain. The thoracic spine is painful on motion, and there is additional limitation of the thoracic spine with pain, fatigue, weakness, and lack of endurance following repetitive use and during the flare-up. There is painful motion, spasm, and tenderness of the thoracic spine. There is muscle spasm of the thoracic spine. Then, there is guarding of the thoracic muscles and spine with abnormal spinal contour with a kyphosis of the thoracic spine.

---

[1] Flexion is "the act of bending or condition of being bent." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 725 (31st ed. 2007) [hereinafter DORLAND'S]. Extension is "the movement that straightens or increases the angle between bones or parts of the body. *Id*. at 670. Abduction means "to draw away from the median plane." *Id*. at 2.

R. at 243. ₂

In an April 2005 rating decision, a VA regional office increased the disability ratings for each of Mr. Cullen's disabilities from 10% to 20%. Mr. Cullen disagreed with the ratings assigned via a Notice of Disagreement in May 2005, and ultimately appealed to the Board in November 2005.

In February 2008, the Board issued the decision on appeal denying entitlement to increased disability ratings. Regarding Mr. Cullen's thoracic spine disability, the Board discussed the criteria contained in 38 C.F.R. § 4.71a, and concluded that the medical evidence supported only a 20% rating. In this regard, the Board stated:

> Considering limitation of motion, the competent medical evidence of record shows that the veteran currently has forward flexion of the thoracolumbar spine limited to 70 degrees with pain and some additional limitation caused by pain, fatigue, weakness and lack of endurance following repetitive use. The Board has considered the applicability of *DeLuca v. Brown*, 8 Vet. App. 202, including whether there is a basis for assigning a rating in excess of 20 percent due to additional limitation of motion resulting from pain or functional loss. *See* 38 C.F.R. §§ 4.40 and 4.45. There is no question in this case that pain is a component of the veteran's disability. Nevertheless, the Board finds that the effects of pain reasonably shown to be due to the veteran's service-connected degenerative joint disease of the thoracolumbar spine are contemplated in the 20 percent rating currently assigned. The competent evidence of record does not show that pain, fatigue, weakness and lack of endurance following repetitive use causes forward flexion of the thoracolumbar spine to be limited to 30 degrees or less or to be equivalent to favorable ankylosis.[3] *See* 38 C.F.R. § 4.40; *DeLuca, supra*. While repetitive motion reportedly added additional limitation, the Board is of the opinion that even considering this additional limitation as reported by the VA examiner the veteran's disability picture more nearly approximates the criteria required for the 20 percent rating (forward flexion limited to between 30 and 60 degrees). *See* 38 C.F.R. § 4.7 la, DC 5242. As such, an evaluation in excess of 20 percent for degenerative joint disease of the thoracic spine based on limitation of motion is not warranted. *See id*., *see also* 38 C.F.R. § 4.7 la.

---

[2] Lordosis is "abnormally increased concavity in the curvature of the lumbar spinal column as viewed from the side." DORLAND'S at 1090. Paravertebral means "beside the vertebral column." *Id*. at 1403. T4, T5, and T6 indicate the 4th, 5th, and 6th vertebrae of the thoracic spinal column. *See* http://visual.merriam-webster.com/images/human-being/anatomy/skeleton/spinal-column.jpg (last visited June 11, 2010). Kyphosis is "abnormally increased convexity in the curvature of the thoracic spinal column as viewed from the side." DORLAND'S at 1007.

[3] Ankylosis is "immobility and consolidation of a joint due to disease, injury, or surgical procedure." DORLAND'S at 94.

R. at 19. Regarding Mr. Cullen's shoulder and back disability, the Board discussed the medical evidence pertaining to the limitation of motion in his right shoulder but ultimately concluded that the September 2004 VA examination supported only the current 20% rating. With respect to the *DeLuca* factors, the Board's discussion was essentially the same as quoted above for the thoracic spine disability.

On appeal, Mr. Cullen first argues that the Board erred in its interpretation of 38 C.F.R. § 4.71a.[4] Specifically, he contends that a proper reading of the regulation required the Board to award him *both* a 20% disability rating *and* a 40% disability rating for his thoracic spine condition. He asserts that this is so because (1) the criteria are written in the disjunctive and are not duplicative or overlapping, and they therefore serve as independent bases on which to assign a disability rating, and (2) he suffers from symptoms included in the criteria for both a 20% and 40% disability rating. Appellant's Brief (Br.) at 10-15. Mr. Cullen then argues that the Board incorrectly applied 38 C.F.R. § 4.71a, Diagnostic Code 5201, to determine that only a 20% disability rating was warranted for his right shoulder and right side of back condition. Instead, he contends, the September 2004 VA examination on which the Board relied in fact supports a 30% disability rating for that condition.[5] Appellant's Br. at 15-18. He requests that the Court reverse the Board's decision and award a 20% disability rating and a 40% disability rating for his thoracic spine condition, and a 30% disability rating for his right shoulder and back condition, due to limited range of motion.

In response, the Secretary rejects Mr. Cullen's first argument as unsupported by regulations and existing caselaw. However, the Secretary concedes that the Board's discussion of the effects of pain on Mr. Cullen's function is not supported by adequate reasons or bases. Therefore, the Secretary argues, remand, not reversal, is the appropriate remedy for each of Mr. Cullen's claims.

---

[4] Section 4.71a provides a general rating formula for diseases and injuries of the spine. For a 20% disability rating of the thoracic spine, the regulation requires "[f]orward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees;" for a 40% disability rating of the thoracic spine, the regulation requires "forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine." 38 C.F.R. § 4.71a.

[5] Diagnostic Code 5201 provides for a 30% disability rating where there is limitation of motion of the major arm "[m]idway between side and shoulder level," and for a 20% disability rating where the limitation of motion is "[a]t shoulder level." 38 C.F.R. § 4.71a, Diagnostic Code 5201.

## II. ANALYSIS

### A. Entitlement to Two Disability Ratings for One Condition

#### 1. VA's Interpretation of 38 C.F.R. § 4.71a

A Board determination of the appropriate degree of disability under the rating code is a finding of fact subject to the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *see Smallwood v. Brown*, 10 Vet.App. 93, 97 (1997). However, here, the Court is asked to determine whether the Secretary's interpretation of 38 C.F.R. § 4.71a (specifically, the rating formula for diseases and injuries of the spine) as permitting the assignment of only one disability rating is proper, a legal question that the Court reviews de novo. 38 U.S.C. § 7261(a)(1); *see Smith v. Gober*, 14 Vet.App. 227, 230 (2000). The regulation at issue in this matter is 38 C.F.R. § 4.71a, the rating schedule for disabilities of the musculoskeletal system. Of particular concern to Mr. Cullen is the "General Rating Formula for Diseases and Injuries of the Spine," which corresponds to Diagnostic Codes 5235-5243 and provides the following:

> With or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease
>
> Unfavorable ankylosis of the entire spine. . . . . . . . . . . . . . . . 100[% disability rating]
>
> Unfavorable ankylosis of the entire thoracolumbar spine . . . . . . . . . . . . . . . . . . . 50
>
> Unfavorable ankylosis of the entire cervical spine; or, forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
>
> Forward flexion of the cervical spine 15 degrees or less; or, favorable ankylosis of the entire cervical spine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
>
> Forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, the combined range of motion of the cervical spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
>
> Forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, forward flexion of the cervical spine greater than 30 degrees but

not greater than 40 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, combined range of motion of the cervical spine greater than 170 degrees but not greater than 335 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

38 C.F.R. § 4.71a (2010).

Mr. Cullen contends that because the criteria for each spinal disability rating are written in the disjunctive, the criteria provide "independent bases for establishing either a 20-percent or 40-percent rating" for his thoracic spine disability. Appellant's Br. at 4. More precisely, Mr. Cullen contends that, because he has symptoms that match one of the criteria necessary for a 20% disability rating (muscle spasm or guarding severe enough to result in an abnormal spinal contour with kyphosis) and one of the criteria necessary for a 40% disability rating (favorable ankylosis of the entire thoracic spine), and because those criteria are not "duplicative or overlapping," he is entitled to *two* disability ratings for his thoracic spine condition. Appellant's Br. at 5. Moreover, at oral argument, Mr. Cullen asserted that the Secretary's interpretation of this portion of § 4.71a–that he is entitled to only one disability rating for his thoracic spine condition–should be invalidated because it is unreasonable.

VA rejects Mr. Cullen's interpretation of § 4.71a and argues that existing regulations and caselaw make it clear that a claimant may be awarded only one disability rating for a particular condition, absent express contrary authorization in the regulation. At oral argument, the Secretary noted that this question had never been raised prior to Mr. Cullen's case, a fact that accounts for the lack of VA General Counsel Precedent Opinions or other question-specific interpretation on the matter. However, prior to oral argument, the Secretary submitted additional relevant authority, specifically, the notice of proposed rulemaking to amend the portion of § 4.71a at issue in this case. The Secretary argues that that document provides insight into his interpretation of the general rating formula for diseases and injuries of the spine prior to the litigation of this case.

In *Cathedral Candle Co. v. U.S. Int'l Trade Commission*, the United States Court of Appeals for the Federal Circuit (Federal Circuit) described the substantial level of deference generally afforded to an agency's interpretation of its own regulation, noting that the interpretation is "'of

6

controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" 400 F.3d 1352, 1364 (Fed. Cir. 2005) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). Such generous deference is due even when the agency's interpretation is presented in a brief during the litigation stage, as long as there is "'no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.'" *Id.* (quoting *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997) (noting that deference must be afforded to an agency's interpretation of a regulation even where that interpretation is first advanced in a legal brief if that position articulates a well established agency practice)).

The Court concludes that Mr. Cullen's argument, although creative, is not persuasive. The language of the regulation, read as a whole, makes clear that the regulation prohibits multiple disability ratings for a single spinal disability, except in certain circumstances. In note 1, the rating specialist is specifically directed to evaluate particular symptoms, specifically, "associated objective neurologic abnormalities," under the "appropriate diagnostic code." 38 C.F.R. § 4.71a, Diagnostic Codes 5234-5243, note 1. This statement indicates that there are some circumstances under which an additional disability rating for symptoms related to a spinal disability is warranted. Mr. Cullen does not suggest that either of his claimed symptoms are neurologic abnormalities warranting an additional disability rating. Similarly, note 6 states that when a claimant has disabilities of *both* the cervical *and* thoracolumbar spine, the resulting disabilities are to be rated separately, i.e., may be assigned separate disability ratings under the general rating formula.[6] The implication of this statement is that where a claimant's disability involves *only* the thoracolumbar spine, as Mr. Cullen's does, he is entitled to only one disability rating for that condition.

Turning to VA's notice of proposed rulemaking, published in the Federal Register in September 2002 (prior to the final rule's enactment in November 2003), the Court finds similar support for the Secretary's position. VA proposed to amend VA's "Schedule for Rating Disabilities by revising that portion of the Musculoskeletal System that addresses disabilities of the spine." 67 Fed. Reg. 56,506 (Sept. 4, 2002). VA stated that it intended to "revise the evaluation criteria for rating disabilities of the spine by establishing a general rating formula that will apply to all diseases

_____

[6] The note provides an exception where there is "unfavorable ankylosis of both segments," in which case they are to be rated as a single disability. 38 C.F.R. § 4.71a, Diagnostic Codes 5234-5243, note 6.

7

and injuries of the spine." 67 Fed. Reg. at 56,510. VA explained its proposal to include note 1, discussed above, stating that such direction to other diagnostic codes for evaluation of neurologic abnormalities was necessary because the variety of neurologic abnormalities that might stem from diseases and injuries of the spine made it impractical to include them in the proposed rating schedule, which concerned only orthopedic limitations. This statement implies that separate disability ratings would be available for some kinds of disabilities that stem from spinal disabilities (i.e., neurologic disabilities), but that one disability rating would be assigned under the general rating formula for any orthopedic limitations that arose.

VA also proposed to "delete the seven diagnostic codes . . . that involve findings of ankylosis or limitation of motion of the spine because, rather than representing *conditions or diagnoses*, they are findings that are common to a variety of spinal conditions." *Id.* (emphasis added). This statement directly supports the Secretary's argument that disability ratings are assigned based on a "condition," rather than on any symptoms of a particular condition, which is essentially what Mr. Cullen's argument boils down to. In fact, ankylosis of the thoracic spine is the basis for Mr. Cullen's asserted entitlement to a separate 40% disability rating in this case. It is clear, however, that VA intended to do away with separate disability ratings for ankylosis and instead rate spinal *conditions* (i.e., disabilities) that include ankylosis as a *symptom*.

Additionally, VA proposed to eliminate the diagnostic code for lumbosacral strain "based on pain, muscle spasm, limitation of motion, listing of the spine, loss of lateral motion with osteoarthritic changes, etc." 67 Fed. Reg. at 56,512. VA stated that it would move lumbosacral strain to Diagnostic Code 5237 (that is, within the general formula for rating disabilities or injuries of the spine), "which would include criteria adequate for its evaluation." *Id.* Again, the fact that VA eliminated a separate diagnostic code that could be based on muscle spasms (among other symptoms[7]) and instead included muscle spasms as one of the criteria included in several of the disability ratings for the spine demonstrates VA's intent to eliminate the possibility of assigning a

---

[7] The general rating formula for the spine states that the formula will be applied "with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease." 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243; *see* 68 Fed. Reg. 51,454 (Aug. 27, 2003).

8

separate disability for that *symptom* in addition to a disability rating for the overarching spinal *condition*. VA's final rule, published in August 2003, confirms this:

> Pain alone cannot be evaluated without being associated with an underlying pathologic abnormality. In the case of spine disabilities, it would be rare for pain not to be present. Pain is often the primary factor limiting motion, for example, and is almost always present when there is muscle spasm. Therefore the evaluation criteria provided are meant to encompass and take into account the presence of pain, stiffness, or aching, which are generally present when there is a disability of the spine.

68 Fed. Reg. at 51,454-55. Further: "[W]e developed evaluation criteria that are meant to take pain and other symptoms into account. Therefore an evaluation based on pain alone would not be appropriate, unless there is specific nerve root pain, for example, that could be evaluated under the neurologic sections of the rating schedule." 68 Fed. Reg. at 51,455.

These statements by VA, made long before the question arose before the Court, make clear when a separate disability rating is warranted–for example in the case of neurologic abnormalities, or when a claimant has both thoracic and cervical spine disabilities. These statements also make clear VA's position that separate disability ratings are not to be assigned for different *symptoms* of an underlying spinal condition, such as pain, ankylosis, or muscle spasms. The Court concludes that VA's position is consistent both with the regulation itself and with VA's demonstrated interpretation of the regulation and is therefore due substantial deference from the Court. *See Auer*, 519 U.S. at 461-62; *Cathedral Candle Co.*, 400 F.3d at 1364. Mr. Cullen has not carried his burden of demonstrating that the Secretary's interpretation or position is unreasonable. *See Reizenstein v. Shinseki*, 583 F.3d 1331, 1336 (Fed. Cir. 2009) ("In order to defeat the VA's claim to deference, [the appellant] must give us a 'reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.'" (quoting *Cathedral Candle Co.*, 400 F.3d at 1364)).

### 2. Applicability of Other Regulations

Mr. Cullen's argument that he is entitled to two disability ratings for his thoracic spine condition is also not supported by other regulations. Under 38 C.F.R. § 4.7, "Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the

lower rating will be assigned." This regulation clearly indicates that only one disability rating per diagnostic code may be assigned and that it will be based on the overall disability picture. Moreover, the Federal Circuit has held that a veteran simply "cannot be compensated more than once for the same disability." *Boggs v. Peake*, 520 F.3d 1330, 1337 (Fed. Cir. 2008); *see* 38 C.F.R. § 4.14 (2010) ("The evaluation of the same disability under various diagnoses is to be avoided.").

Mr. Cullen is correct that 38 C.F.R. § 4.25(b) entitles veterans to have "the *disabilities* arising from a single disease entity . . . rated separately" (emphasis added) and the individual disability ratings combined. However, he asks the Court to interpret that regulation as permitting separate disability ratings to be based on individual *symptoms* of a disability, rather than on separate *disabilities*. For example, Mr. Cullen would have the Court find that his individual *symptoms* (favorable ankylosis of the entire thoracic spine and muscle spasm or guarding severe enough to result in an abnormal spinal contour with kyphosis) are sufficient to assign two separate disability ratings for the effects of one *disabling condition* (degenerative joint disease of the thoracic spine). That is not permitted. *See Boggs*, 520 F.3d at 1337; *cf. Bradley v. Peake*, 22 Vet.App. 280, 290-91 (2008) (stating that § 4.25 requires that "all *disabilities* are to be rated separately" and noting few exceptions to that rule (emphasis added)).

Mr. Cullen's suggestion at oral argument that the criteria of § 4.71a relating to the spine would have been written in the *con*junctive if separate disability ratings were not permitted for spinal disabilities ignores the fact that the spine is made up of three distinct parts–the cervical spine, the thoracic spine, and the lumbar spine–and that the disputed portion of § 4.71a is a "general" rating formula for diseases and injuries of the spine. Accordingly, both the 20% and 40% disability ratings provide criteria applicable to *either* the cervical spine *or* the thoracic spine. *See* 38 C.F.R. § 4.71a.[8] If the criteria were written in the conjunctive, a claimant would have to show disabilities of *both* the thoracic and cervical spines to establish entitlement to compensation. The Court is therefore not persuaded by this argument.

---

[8] The Court notes that, for rating purposes, § 4.71a combines the thoracic and lumbar spines and provides criteria for rating disabilities of the "thoracolumbar spine."

*3. Appellant's Reliance on Caselaw and VA General Counsel Precedent Opinion 9-2004*

In several of the cases on which Mr. Cullen relies, discussed below, the Court found that the Board erred in requiring a claimant to show each of the various symptoms listed in the rating schedule for *a particular disability rating* for the claimant's alleged condition, when those criteria were written in the disjunctive form. In *Drosky v. Brown*, for instance, the appellant was seeking a 30% disability rating for rheumatic heart disease, and the criteria for that rating were

> inactive rheumatic heart disease "[f]rom the termination of an established service episode of rheumatic fever, *or* its subsequent recurrence, with cardiac manifestations, during the episode or recurrence, for 3 years, *or* diastolic murmur with characteristic EKG manifestations or definitely enlarged heart."

10 Vet.App. 251, 254 (1997) (quoting 38 C.F.R. § 4.104, Diagnostic Code 7000 (1996)) (emphasis added). There, the Secretary conceded, and the Court agreed, that the Board had erred by requiring that the veteran have *both* a diastolic murmur with EKG manifestations *and* a definitely enlarged heart to qualify for a 30% disability rating. *Id.* at 255. Similarly, in *Johnson v. Brown*, the Court found that the Board had erred in requiring a claimant to satisfy all of the disjunctively written criteria in 38 C.F.R. § 4.132 (1994) for a *100% disability rating* for post-traumatic stress disorder. 7 Vet.App. 95, 99 (1994) ("[U]pon remand the Board shall determine whether the appellant's [post-traumatic stress disorder] disability meets *any one of the three independent criteria* required for a *100%* [post-traumatic stress disorder] rating. If the Board determines that one of the criteria is met, it shall award a 100% rating." (emphasis added)). These cases establish that disjunctive criteria for *a particular disability rating* are independent bases on which to assign a single particular disability rating. Neither case supports the interpretation of the assignment of disability ratings that Mr. Cullen puts forth.

Mr. Cullen's reliance on *Esteban v. Brown*, 6 Vet.App. 259 (1994), is similarly misplaced. The Court's holding in *Esteban*, that the "critical element" of whether separate disability ratings are permitted is whether the symptomatology of each rating is "distinct and separate," 6 Vet.App. at 262, cannot be divorced from the context of that case. In *Esteban*, the appellant had four scars on his face as a result of a vehicle accident in service and had been assigned a 10% disability rating under 38 C.F.R. § 4.118, Diagnostic Code 7800 (1993) (disfiguring scars). The Board determined that the appellant's scars might also have been properly evaluated under two additional diagnostic codes,

11

7804 (painful scars) or 5325 (facial muscle injury), but determined that the appellant was entitled to only one 10% disability rating, not three separate 10% disability ratings (to be combined under § 4.25), because "'the evidence of record shows that the residual of an injury to the right side of the veteran's face is compatible with, but does not meet[,] any of the schedular criteria for a rating higher than 10 percent.'" 6 Vet.App. at 260. The Court, however, found:

> The condition embodied in a rating under [Diagnostic Code] 7800 is entirely cosmetic in nature. Such rating does not contain any component of pain or muscle damage. The critical element is that *none* of the symptomatology for any one of these three conditions is *duplicative* of or *overlapping* with the symptomatology of the other two conditions. Appellant's symptomatology is distinct and separate . . . . Thus, as a matter of law, appellant is entitled to combine his 10% rating for disfigurement under [Diagnostic Code] 7800 with an additional 10% rating for tender and painful scars under [Diagnostic Code 7804] and a third 10% rating for facial muscle injury interfering with mastication under [Diagnostic Code] 5325.

*Id.* at 261-62. *Esteban*, a case involving three separate "conditions" or disabilities–as emphasized by the assignment of three separate disability ratings under three separate diagnostic codes–is easily distinguishable from Mr. Cullen's case, in which he seeks two separate disability ratings for the *same* condition or disability–degenerative joint disease of the thoracic spine–under one diagnostic code. The Court is not persuaded that *Esteban* can be fairly read to support Mr. Cullen's argument.

Similarly, the Court also finds Mr. Cullen's reliance on VA General Counsel Precedent Opinion 9-2004 misplaced. That opinion addressed whether a veteran can receive separate disability ratings under 38 C.F.R. § 4.71a, Diagnostic Codes 5260 (leg, limitation of flexion) and 5261 (leg, limitation of extension) for the same joint. VA General Counsel determined that, in some circumstances, separate disability ratings could be assigned (and combined under § 4.25) without constituting pyramiding, which is prohibited by § 4.14. The General Counsel stated:

> [T]he key consideration in determining whether rating under *more than one diagnostic code* is in order is whether the ratings under *different diagnostic codes* would be based on the same manifestation of disability or whether none of the symptomatology upon which the separate ratings would be based is duplicative or overlapping.

VA Gen. Coun. Prec. 9-2004 (Sep. 17, 2004) (emphasis added). As in *Esteban*, the key difference between the question the General Counsel was asked to resolve and Mr. Cullen's case is that the

General Counsel was asked to determine when separate disability ratings under *two particular, different diagnostic codes* is proper, *not* whether separate disability ratings can be assigned under the *same diagnostic code.* Accordingly, the Court rejects Mr. Cullen's argument on this issue.[9]

*4. Summary*

We hold that, within a particular diagnostic code, a claimant is not entitled to more than one disability rating for a *single disability* unless the regulation expressly provides otherwise. To find otherwise would permit absurd results–compensation twice for the same condition–and not only in the case of diseases and injuries of the spine. For example, under 38 C.F.R. § 4.97, the rating schedule for disabilities of the respiratory system, Diagnostic Code 6846 (sarcoidosis) contains disjunctive criteria that are not "duplicative or overlapping," such that a claimant who had both pulmonary and cardiac involvement would be entitled to both a 60% and a 100% disability rating for the same condition under Mr. Cullen's interpretation. Similarly, under 38 C.F.R. § 4.119 (2010), the rating schedule for disabilities of the endocrine system, a 10% disability rating can be awarded under numerous diagnostic codes when continuous medication is required for control, but that requirement does not appear in the criteria for any of the higher disability ratings. According to Mr. Cullen's logic, a claimant who suffered from, for example, hyperthyroidism and required continuous medication to control that condition but who also experienced tachycardia, tremor, and increased pulse or blood pressure related to or caused by that condition would be entitled to *both* a 10% disability rating based on the need for medication *and* a 30% disability rating for the other symptoms. *See* 38 C.F.R. § 4.119, Diagnostic Code 7900. As discussed above, this is simply not contemplated by the rating schedule.

B. Reasons or Bases

In his brief, and at oral argument, the Secretary conceded that the Board's reasons or bases for denying Mr. Cullen's claims were inadequate. In rendering its decision, the Board is required to provide a written statement of the reasons or bases for its "findings and conclusions[] on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(d)(1). The statement must be

---

[9] If Mr. Cullen believes that the current disability rating assigned does not adequately compensate him for the practical effects of his disability, the proper recourse is to seek extraschedular consideration. *See* 38 C.F.R. § 3.321(b)(1) (2010).

adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990).

In *DeLuca v. Brown*, the Court held that 38 C.F.R § 4.40 requires that the disabling effect of painful motion be considered when rating joint disabilities. 8 Vet.App. 202, 205-06 (1995). Pursuant to § 4.40, a "[d]isability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance." Further, under § 4.40, functional loss "may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled." With regard to the joints, 38 C.F.R. § 4.45 provides that "the factors of disability reside in reductions of their normal excursion of movements in different planes." When rating disabilities of joints, including the spine, the Board must discuss any additional limitations a claimant experiences due to pain, weakness, or fatigue. *DeLuca*, 8 Vet.App. at 205-06.

*1. Thoracic Spine*

Here, the Board's discussion of the effects of pain, weakness, or fatigue is conclusory and without supporting rationale:

> There is no question in this case that pain is a component of the veteran's disability. Nevertheless, the Board finds that the effects of pain reasonably shown to be due to the veteran's service-connected degenerative joint disease of the thoracolumbar spine are contemplated in the 20 percent rating currently assigned. The competent evidence of record does not show that pain, fatigue, weakness and lack of endurance following repetitive use causes forward flexion of the thoracolumbar spine to be limited to 30 degrees or less or to be equivalent to favorable ankylosis. While repetitive motion reportedly added additional limitation, the Board is of the opinion that even considering this additional limitation as reported by the VA examiner the veteran's disability picture more nearly approximates the criteria required for the 20 percent rating (forward flexion limited to between 30 and 60 degrees).

R. at 19 (citations omitted). This explanation tacitly acknowledges that the September 2004 VA examiner determined that Mr. Cullen's "thoracic spine [wa]s painful on motion, and there [wa]s additional limitation of the thoracic spine with pain, fatigue, weakness, and lack of endurance following repetitive use and during the flare-up." R. at 243. The Court, however, perceives two

14

problems with the physician's statement: First, that statement is less than helpful to the Board in reaching a conclusion on this issue because it lacks any specifics regarding the effects of the additional limitation of motion of the spine. Second, despite this shortcoming, not only did the Board opt to rely on such a conclusory statement, but also the Board failed to explain its conclusion any more thoroughly than did the VA examiner. *See* 38 U.S.C. § 7104(d)(1); 38 C.F.R. § 4.2 (2010) (stating that if an examination report does not contain sufficient detail, "it is incumbent upon the rating board to return the report as inadequate for evaluation purposes"); *see also Bowling v. Principi*, 15 Vet.App. 1, 12 (2001) (emphasizing Board's duty to return inadequate examination report). Accordingly, the Court's ability to review the Board's decision on this claim has been frustrated, and vactur and remand is necessary. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is warranted where the Board's reasons or bases are inadequate). On remand, the Board should seek clarification and a more specific description from the VA examiner regarding the extent of the additional limitations Mr. Cullen experiences due to pain, weakness, and fatigue–or provide a new, thorough medical examination–and readjudicate Mr. Cullen's claim.

To the extent that Mr. Cullen contends that the Board erred in not assigning a single 40% disability rating for his thoracic spine condition, the Court need not address that argument at this time. Because the Court has determined that vacatur and remand is warranted for this claim, the Board will be required to readjudicate Mr. Cullen's claim and provide a new statement of reasons or bases for its decision, which will necessarily include a discussion of whether a 40% disability rating is warranted. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order) ("A narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and, of course, before this Court in an appeal, should the Board rule against him.").

### 2. Residuals of Shrapnel Wound

Here, the Board's discussion of the additional limitations due to pain, weakness, or fatigue is very similar to that contained in its discussion of Mr. Cullen's claim for benefits for a thoracic spine condition. The Board wrote:

> There is no question in this case that pain is a component of the veteran's disability. Nevertheless, the Board finds that the effects of pain reasonably shown to be due to the veteran's service-connected residuals of shrapnel wound to the right shoulder and

15

right side of back are contemplated in the 20 percent rating currently assigned. While the September 2004 VA examiner reported that pain, fatigue, weakness, and lack of endurance following repetitive use resulted in inability to lift objects with the right shoulder, taking this into consideration, the Board is still of the opinion the overall disability picture more nearly approximates moderately severe disability of muscle group XX, as opposed to severe. The additional limitation resulting from pain and functional loss also still more nearly approximates limitation of the arm to shoulder level, as opposed to midway between side and shoulder level.

R. at 12-13 (citations omitted).

The Court perceives two problems with this explanation as well: First, the Board's statement that the additional functional limitation more nearly approximates a moderately severe disability is conclusory and unsupported by any further explanation. Second, as the Secretary concedes, the Board did not address the fact that the September 2004 VA examination found that Mr. Cullen's flexion of the right arm/shoulder was limited to 60 degrees, which appears to support Mr. Cullen's assertion that his disability limits the range of motion of his right arm to midway between his side and his shoulder and therefore entitles him to a 30% disability rating. *See* R. at 241; 38 C.F.R. § 4.71a, Diagnostic Code 5201; Secretary's Br. at 10-11. The Court therefore concludes that the Board's reasons or bases for denying entitlement to an increased disability rating for this condition are inadequate, and vacatur and remand is required so that the Board can adequately explain its conclusions or conduct further development to obtain the information and evidence necessary to adjudicate Mr. Cullen's claims. *See Tucker*, 11 Vet.App. at 374.

On remand, Mr. Cullen is free to submit additional evidence and argument with respect to both of his claims, in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). In addition, the Board shall proceed expeditiously, in accordance with 38 U.S.C. § 7112 (expedited treatment of remanded claims).

### III. CONCLUSION

Upon consideration of the foregoing, the February 27, 2008, Board decision is VACATED and the matters are REMANDED for readjudication consistent with this decision.