﻿Citation Nr: AXXXXXXXX
Decision Date: 12/31/20 Archive Date: 12/31/20

DOCKET NO. 190515-20018
DATE: December 31, 2020

ORDER

1. Entitlement to a rating in excess of 10 percent for residuals of a right wrist fracture is denied. 

2. Entitlement to a separate rating of 20 percent for right wrist neuritis with an effective date of March 4, 2019 is granted. 

3. Entitlement to a rating of 10 percent for a right wrist scar with an effective date of November 20, 2018 is granted. 

FINDINGS OF FACT

1. The Veteran’s right wrist condition is manifested by decreased range of motion and pain on motion.

2. The Veteran has neuritis manifested by intermittent tingling sensations and feelings of coldness as a residual of treatment for right wrist fracture. 

3. The Veteran has a single right wrist scar that is painful but not unstable. 

CONCLUSIONS OF LAW

1. The criteria for a disability rating greater than 10 percent for residuals of a right wrist fracture have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.7, 4.40, 4.45, 4.71a, Diagnostic Code (DC) 5215 (2019).

2. The criteria for a separate 20 percent rating, from March 4, 2019, for incomplete paralysis of the radial nerve of the right upper extremity are met. 38 U.S.C. § 1155, 5107; 38 C.F.R. § 4.124a , Diagnostic Code 8614 (2019).

3. The criteria for a compensable disability rating for a right wrist scar have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.118, Diagnostic Code 7805 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty in the United States Army from July 2011 to July 2012. 

This matter is before the Board of Veterans’ Appeals (Board) on appeal from a April 2019 rating decision issued by a Department of Veterans Affairs (VA) Regional Office (RO) that granted service connection for residuals of a right wrist fracture and assigned a 10 percent rating; and granted service connection for right wrist scar and assigned a noncompensable rating; both effective November 20, 2018. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law, which went into effect on February 19, 2019, creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran filed VA Form 10182 in May 2019, opting into the AMA appeal process and requesting a hearing before the Board. The Veteran essentially objected to the ratings assigned to include any neurological residuals of the wrist fracture. 

The Veteran testified before the board in August 2020. A transcript of the hearing is of record.

Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The percentages are based on the average impairment of earning capacity as a result of service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C. § 1155 ; 38 C.F.R. § 4.1.

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

Since the Veteran timely appealed the rating initially assigned for his disability, the Board must consider entitlement to “staged” ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the appeal. See Fenderson v. West, 12 Vet. App. 119, 125-26 (1999); Hart v. Mansfield, 21 Vet. App. 505, 50910 (2007).

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; however, separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other. Esteban v. Brown, 6 Vet. App. 259, 262 (1994); 38 C.F.R. § 4.14. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires the use of an additional diagnostic code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen.

Entitlement to a rating in excess of 10 percent for right wrist fracture 

In November 2018 the Veteran indicated his intent to file a claim of service connection for his right wrist condition and filed his VA Form 21-526EZ in February 2019. The Veteran was granted service connection in April 2019, with a rating of 10 percent effective November 20th, 2018. The Veteran appealed this decision in May 2019 by filing VA form 10182. 

The Veteran is in receipt of a 10 percent rating under 38 C.F.R. § 4.71a , DC 5215, which pertains to limitation of motion of the wrist, for his right hand problems. The Veteran contends that the rating does not accurately reflect the severity of his disability.

Under 38 C.F.R. § 4.71a , DC 5215, a 10 percent rating is assigned for limitation of dorsiflexion of the wrist less than 15 degrees. A 10 percent rating may also be assigned when palmar flexion is limited in line with forearm. Id. There is no differentiation in the ratings assigned for the major and minor hands under DC 5215. Separate 10 percent ratings may not be assigned under DC 5215 for both limitation of dorsiflexion and limitation of palmar flexion. See Cullen v. Shinseki, 24 Vet. App. 74, 84 (2010) (holding that within a particular DC, a claimant is not entitled to more than one disability rating for a single disability unless the regulation expressly provides otherwise).

Normal range of motion of the wrist is 0 to 70 degrees dorsiflexion, 0 to 80 degrees palmar flexion, 0 to 45 percent ulnar deviation, and 0 to 20 percent radial deviation. 38 C.F.R. § 4.71, PLATE I (2016).

A medical examination was provided in March 2019. There the VA examiner noted that the Veteran had underwent surgeries of the right wrist in September 2018 and February 2019, in which surgical hardware had been inserted and then removed. The Veteran reported daily dull pain that was constant in nature. Flare ups were reported as involving severe pain, occurring at night 6 to 7 times per month, each time lasting approximately 1 hour, as well as when performing repetitive movement such as typing at work. The VA examiner described the Veteran’s limitations on range of motion but found no ankylosis. In addition to constant pain, the VA examiner noted “continued tingling in fingers of the right hand and sensation of coldness intermittently mildly affecting the radial nerve of the right hand.” The functional impact of the Veteran’s disability was described as follows: 

“Veteran has a civilian job working on computers (IT) and manages fuel sites: he described right wrist pain and right-hand tingling when typing, working on the computer hardware. He also continues to serve as a diesel mechanic in the Army Natl guard and he described that he can hold the tools but when he applies force to use the tools he cannot maintain his grip due to right wrist weakness and pain which causes him to drop the tools. Veteran reported he has missed two months of work due to right wrist surgeries and recoveries. He also described he misses about 2 to 3 days monthly due to continued right wrist pain.” See March 2019 C&P Exam. 

The Veteran subsequently testified before the Board in August 2020. There, the Veteran explained that he underwent surgeries in September 2018 and February 2019, which he attributed to his worsening symptomatology. The Veteran testified that due to his right wrist he couldn’t bend his wrist, couldn’t perform push-ups, had trouble with extended typing, could not carry heavy weights, and struggled in using mechanical tools. The Veteran explained that these symptoms caused difficulties in his civilian employment, which required typing, and his National Guard service. See August 2020 Hearing Transcript. 

A review of the Veteran’s medical record does not indicate any evidence that contradicts the findings of the March 2019 VA examiner, nor has the Veteran contended that the examination was inadequate. As such, the Board turns to its analysis of the Veteran’s claim for an increased rating. 

As noted above, separate ratings under DC 5215 are not warranted and the Veteran is in receipt of the maximum rating under DC 5215. The Board acknowledges the Veteran’s lay statements regarding his difficulty performing activities such as typing or using mechanical tools for extended periods of time. As such, the Board has considered whether a rating based on ankylosis of the hand, wrist, or fingers would be warranted; however, the medical professionals have consistently found that the Veteran did not have ankylosis of the hand, wrist, or fingers on examination. As such, a higher or separate rating is not warranted based on ankylosis of any involved joint.

Given the severity of the Veteran’s symptoms, based on his testimony before the Board, the Board has considered whether a higher rating would be warranted under DC 5151 as the functional equivalent of amputation of the right ring and little fingers. However, the March 2019 VA examiner found that the Veteran would not be better served by amputation of the fingers with the subsequent use of prostheses, and that his muscle strength was active movement against some resistance. As such, a rating under DC 5151 is not warranted.

The Board is aware of the detrimental effect that the consistently reported pain in the right hand which has impacted his civilian profession and his continued service in the National Guard. However, the Board notes that the Veteran’s functional loss was considered in awarding the maximum possible rating under DC 5215. 38 C.F.R. §§ 4.40, 4.45; see also DeLuca v. Brown, 8 Vet. App. 202 (1995). However, the Board finds that a rating in excess of 20 percent may not be provided for his right wrist condition. 

However, the Board notes that the March 2019 VA examiner found “intermittent right-hand neuropathy, mildly affecting the radial nerve.” The effect of this was noted to be “continued tingling in fingers of the right hand and sensation of coldness intermittently mildly affecting the radial nerve of the right hand.” See March 2019 C&P Exam, pp. 1, 8. The Board does find that compensation is warranted under DC 8614. 

DC 8614 is rated with DC 8514, which contemplates impairment of the musculospiral (radial) nerve. The Board finds that the Veteran’s disability is most closely analogous to neuritis, as neuritis is characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating. See 38 C.F.R. § 4.123. Given that the Veteran is right hand dominant, a 20 percent disability rating is warranted for mild incomplete paralysis, a 30 percent rating is warranted for moderate incomplete paralysis and a 50 percent rating is warranted for severe incomplete paralysis. 38 C.F.R. § 4.124a , DC 8614. The words “mild,” “moderate” and “severe” are not defined in the VA Schedule for Ratings Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence, to the end that its decisions are “equitable and just.” 38 C.F.R. § 4.6 (2017). It should also be noted that use of such terminology by VA examiners and others, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. § 4.2, 4.6 (2017).

In the present case, the March 2019 VA examiner found that the Veteran’s neuritis mild affected his radial nerve. Furthermore, the symptoms of the Veteran’s neuritis have been shown to be purely sensory in nature. As such, the Board finds that a separate 20 percent rating is warranted, given that the symptoms manifest as feelings of coldness or tingling. Taken together, the Board finds that the examiner’s finding of mild neuritis is supported by the record, and a 20 percent rating is warranted. 

The assignment of effective dates is governed by 38U.S.C. §5110 and 38C.F.R. §3.400. The effective date for compensation based on an original claim, or a claim for increase, will be the date of receipt of the claim or the date that entitlement arose, whichever is later. In the present case, the Board finds that the date in which entitlement arose for neuritis of the upper right extremity was March 4, 2019, in which the Veteran received a VA examination. As this is the latest of the appropriate dates, the Board finds that it is the proper effective date for the Veteran’s 20 percent rating. 

During the Board hearing, the Veteran contended that a rating under Diagnostic Code 5033 for placement of a prothesis and a total temporary rating for convalescence following surgery is warranted. Following the Board hearing, the Veteran submitted records of the surgical treatment of the wrist. He underwent wrist surgery on September 20, 2018 prior to the effective date of service connection. Therefore, entitlement for a temporary total rating following this surgery is not available as the disability was not yet service-connected. During the September 2018 surgery, a plate and screw were placed to stabilize the joint. After the date of service-connection, the retained hardware was removed on February 22, 2019. 

The Board finds that the temporary placement of a plate and screw to stabilize the right wrist joint during healing is not the placement of a prosthetic replacement of the wrist joint as contemplated in Diagnostic Code 5053. Not only did the hardware not replace the joint, but it was placed to immobilize the area during healing and not to afford movement as would a prosthetic appliance. Following the removal of hardware, the Veteran was provided a splint. On March 1, 2019, his attending surgeon noted some wound dehiscence with activity and that his activities would be limited for a brief period with sutures to be removed in one week. In a functional capacity certificate the same day, the surgeon limited the Veteran from performing pushups, swimming, and upper body weight training but could carry his weapon, ride in vehicles, and perform all other National Guard activities. The Veteran testified that he was unable to work for two months and had difficulty typing, but he was able to go on active duty starting in April 2020. Therefore, the Board finds that the criteria for a temporary total rating in 38 C.F.R. § 4.30 because the recovery did not require at least one month of convalescence and did not require a cast or severe residuals such as incompletely healed surgical wounds. 

The Board considered all potentially applicable provisions of 38 C.F.R. Parts 3 and 4, irrespective of whether they have been raised by him, his representative, or otherwise by the record, as required by Schafrath v. Derwinski, 1 Vet. App. 589 (1991). In summary, the Board concludes that a rating greater than 10 percent under DC 5215 for the right wrist disability is not warranted. However, the Board has found that a separate 20 percent rating for neuritis of the right wrist radial nerve is warranted.

Entitlement to a compensable rating for a service-connected scar 

The Veteran contends that he is entitled to a compensable rating for the scar on his right wrist. 

The Veteran’s scar has been assigned a noncompensable rating under Diagnostic Code (DC) 7805. DC 7805 instructs to evaluate scars under DC 7800, 7801, 7802, and 7804. Recently, VA amended the criteria for rating the skin. See Schedule for Rating Disabilities; Skin, 83 Fed. Reg. 32592 (July 13, 2018). The amendments were made effective as of August 13, 2018, and apply to claims, such as the Veteran’s, that were pending before VA as of that date, with the provision that the more favorable of the old and new criteria are to be applied.

DC 7800 contemplates scars of the head, face, or neck. 38 C.F.R. § 4.118, DC 7800. As the Veteran’s service-connected scar is located on his back, a compensable rating is not applicable in this case.

DC 7801 provides ratings for burn or other scars (not on the head, face, or neck) that are deep and nonlinear. Deep and nonlinear scars involving an area or areas of at least 6 square inches (39 sq. cm) but less than 12 square inches (77 sq. cm.) are rated 10 percent. Scars in an area or areas of at least 12 square inches (77 sq. cm.) but less than 72 square inches (465 sq. cm.) are rated 20 percent. Scars in an area or areas of at least 72 square inches (465 sq. cm.) but less than 144 square inches (929 sq. cm.) are rated 30 percent. Scars in an area or areas of 144 square inches (929 sq. cm.) or greater are rated 40 percent. 38 C.F.R. § 4.118. Note (1) specifies that a deep scar is one associated with underlying soft tissue damage. 38 C.F.R. § 4.118, DC 7801. 

DC 7802 provides a maximum 10 percent rating for a burn or other scars that are superficial and nonlinear involving an area of 144 square inches (929 sq. cm) or greater. Note (1) provides that a superficial scar is one not associated with underlying soft tissue damage. Note (2) specifies that if multiple qualifying scars are present, or if a single qualifying scar affects more than one extremity, or a single qualifying scar affects one or more extremities and either the anterior portion or posterior portion of the trunk, or both, or a single qualifying scar affects both the anterior portion and the posterior portion of the trunk, assign a separate evaluation for each affected extremity based on the total area of the qualifying scars that affect that extremity, assign a separate evaluation based on the total area of the qualifying scars that affect the anterior portion of the trunk, and assign a separate evaluation based on the total area of the qualifying scars that affect the posterior portion of the trunk. The midaxillary line on each side separates the anterior and posterior portions of the trunk. Combine the separate evaluations under §4.25. Qualifying scars are scars that are nonlinear, superficial, and are not located on the head, face, or neck. 38 C.F.R. § 4.118, DC 7802.

DC 7804 provides a 10 percent rating for one or two scars that are unstable or painful, a 20 percent rating for three or four scars that are unstable or painful, and a 30 percent rating for five or more scars that are unstable of painful. Note (1) provides that an unstable scar is one where, for any reason, there is frequent loss of covering of skin over the scar. Note (2) provides that if one or more scars are both unstable and painful, add 10 percent to the evaluation that is based on the total number of unstable or painful scars. Note (3) provides that scars evaluated under DC 7800, 7801, 7802, or 7805 may also receive an evaluation under DC 7804, when applicable. 38 C.F.R. § 4.118, DC 7804.

In every instance where the schedule does not provide a 0 percent rating for a diagnostic code, a 0 percent rating will be assigned when the requirements for a compensable rating are not met. 38 C.F.R. § 4.31.

In the present case, the March 2019 VA examiner found that the Veteran had a scar on his right wrist with a length of 19 cm and a width of 6 cm. No evidence of the scar being painful or unstable was noted. See March 2019 C&P Exam, p. 14. VA and private medical records do not contain any additional evidence regarding the scar, though the Board does note that the Veteran testified at his August 2020 Board Hearing that the scar was painful when rubbed against or touched. See August 2020 Hearing Transcript, p. 8. The Veteran is competent to report symptoms observable by his senses, including pain. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); 38 C.F.R. § 3.159 (a). The Board finds that, in the present case, the Veteran’s lay testimony is at least in equipoise in comparison to the findings of the March 2019, given that the Veteran’s testimony is credible and is not contradicted by a review of the record. 

After review of the record, the Board finds that a compensable rating of 10 percent is warranted for the Veteran’ right middle wrist scar. While the probative evidence of record does not show that the scar is unstable, there is competent evidence of the scar being painful. 

Accordingly, the Board finds that the weight of competent and credible evidence supports the assignment of a rating of 10 percent, but not higher, for the Veteran’s right wrist scar. 

 

 

J.W. FRANCIS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board P. Abels, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.