http://www.va.gov/vetapp16/Files4/1634360.txt

Citation Nr: 1634360 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 08-34 533 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Chicago, Illinois

THE ISSUE

Entitlement to an initial disability rating in excess of 10 percent for degenerative disc disease of the L5-S1, with disc herniation, prior to February 12, 2015.

REPRESENTATION

Appellant represented by: Disabled American Veterans

ATTORNEY FOR THE BOARD

P. M. Johnson, Associate Counsel

INTRODUCTION

The Veteran served on active duty for periods that included: June 18, 1982 to June 29, 1982; September 1982 to June 1990; and August 2002 to July 2006. 

This matter came before the Board of Veterans' Appeals (hereinafter Board) on appeal from a September 2006 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina, which granted service connection for degenerative disc disease of L5-S1 and assigned an initial 10 percent rating, effective August 1, 2006. Subsequently, jurisdiction of the Veteran's file was transferred to the RO in Chicago, Illinois. 

In a February 2013 decision, the Board denied the Veteran's claim of entitlement to an initial rating in excess of 10 percent for degenerative disc disease of L5-S1. The Veteran appealed the Board's denial of his claim to the United States Court of Appeals for Veterans Claims (Court). In June 2014, the Court issued a memorandum decision that vacated the Board's decision and remanded the case to the Board for readjudication of the claim consistent with the considerations discussed in the memorandum decision.

In November 2014, the Board remanded the issue to the Agency of Original Jurisdiction (AOJ) for further evidentiary development. 

In October 2015, the Board denied the Veteran's claim of entitlement to an initial rating in excess of 10 percent for degenerative disc disease of L5-S1 for the period prior to February 12, 2015, but granted a 50 percent rating for the period on and after February 12, 2015. The Veteran appealed the denial for the period prior to February 12, 2015 to the Court. In June 2016, the Court granted a Joint Motion for Partial Remand (Joint Motion) vacating the portion of the Board's decision for the period prior to February 12, 2015 and remanding the remaining issue to the Board for further proceedings consistent with the Joint Motion.

FINDINGS OF FACT

1. Prior to February 12, 2015, the Veteran's lumbar spine disability was manifested by forward flexion to 45 degrees, with reduced range of motion after 5 repetitions due to pain and lack of endurance, and flare-ups that occurred approximately once per month that would require him to lie down.

2. Prior to February 12, 2015, the Veteran's lumbar spine disability was not manifested by symptoms that more closely reflected: unfavorable ankylosis of the lumbar spine; or incapacitating episodes having a total duration of at least six weeks within a 12 month period. 

CONCLUSION OF LAW

Prior to February 12, 2015, the criteria for an initial rating of 40 percent, but no higher, for a low back disability have been met. 38 U.S.C.A. §§ 1155, 5110(g) (West 2002, 2014); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.6, 4.7, 4.14, 4.21, 4.25, 4.27, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes (DC) 5235-5243 (2006-2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran has been assigned an initial 10 percent disability rating for the period on appeal. In July 2007, he indicated that the rating did not reflect the functional limitations that were caused by his pain. He stated that he had taken two Vicodin prior to his March 2006 VA examination and that the examination was very painful, despite his medication. "The doctor asked if I could touch my toes. I informed him at that time that I could, but it would cause excruciating pain... I did touch my toes with tears in my eyes." In a February 2015 statement, the Veteran reported that the deterioration of his back disorder had caused him to stop participating in several activities that he used to enjoy, including: sailing, golfing, and ceramics (throwing). His ability to walking and ride bikes was also limited to short durations. He indicated that his condition was causing him to use three to five sick days each year until the back pain receded. 

The Veteran was afforded a VA examination in March 2006. He reported that his back pain began in 1987. He was setting up a tent when his back "went out" and he was unable to function for approximately 2 days. Since that time, he stated that his back pain had become constant and that it was located in the low back with occasional radiation to the posterior aspects of his bilateral knees. The Veteran described the back pain as a dull ache that on occasion would become transiently very sharp and stabbing. His pain would range from mild at its best to severe at its worst. He also reported stiffness in the back. He had previously used ibuprofen, Vicodin, and Percocet to treat his pain. He also had sought treatment from a chiropractor. He reported flare ups approximately once a month, during which time his activities were significantly limited and required that he rest and lie down wherever he happened to be and he would not work during these periods. He stated that he had missed approximately 20-24 days of work since 2002 due to his back pain. He did not use a back orthosis and felt that he could not walk greater than two miles. He denied any history of back surgery or injections. He indicated that he could accomplish activities of daily living and for the most part his usual occupation when he was not having flare-ups. 

Range of motion of the lumbar spine was from 0 degrees to 95 degrees with pain from 10 degrees to 95 degrees both flexing down and coming up. His extension is 0 to 30 degrees which is painful seemingly throughout. He was noted to be able to heel and toe walk, easily. On palpation, the Veteran was nontender over the bony or soft tissue elements of the dorsal and lumbar spine. After 5 repetitions of range of motion, the examiner noted that the Veteran slowed down his pace and appeared to be having much more trouble going through the preserved range of motion due to pain and lack of endurance. The Veteran was diagnosed with bilateral patellofemoral syndrome and low back arthritic change with degenerative disk disease and disk herniation. 

VA progress notes from June 2008 to August 2008 were received. In June 2008, the Veteran reported intermittent low back pain. In August 2008, the Veteran reported having had low back pain for the past 20 years; he stated that his pain had progressively worsened over the prior two months. He had been seen in the emergency room twice for pain control in that time. His pain was noted to increase with changes in position, running, sitting or walking for prolonged periods. He reported that he felt "stiff" in the morning until performing stretches and that his pain was also relieved by Vicodin. The Veteran also reported occasional right leg weakness when he gets tired. He denied any bladder or bowel incontinence 

An August 2008 MRI was received in October 2008, which revealed findings of signal change compatible with inflammation due to degenerative disc and vertebral endplate changes at L5-S1 with broad-based disc protrusion and evidence of angular tears. Prominent endplate spurring and posterior bony ligamentous hypertropic change contribute to moderate bilateral neural foraminal narrowing. No other significant focal changes were present. 

The Veteran was afforded another VA examination in May 2011. He reported pain on a daily basis, which did not affect his activities of daily living. His ambulation was noted to be unlimited and he did not report the use of assistive devices. He complained of back pain and right lower extremity radiculopathy. No loss of bowel or bladder function was reported. He denied any numbness or weakness. 

On lumbar examination, he was able to forward flex to 80 degrees with stiffness at 80. Extension was to 25 degrees with pain at 25 degrees. He was able to toe raise and heel raise without fatigability. He had 2+ reflexes and 5/5 muscle strength. The examiner stated that the ranges of motion during passive active and three repetitive motions are the same. There was no loss of joint function with use due to pain, weakness, fatigability, incoordination or flare-ups. No assistive devices were noted. There were no incapacitating episodes or radiation of pain and no neurologic findings or effect on the usual occupation or daily activities. 

The Veteran was afforded another VA examination in February 2015. The Veteran reported back pain that was increasing. The examiner noted that his VA records demonstrated progression of spinal arthritis. The Veteran stated that he felt he was "losing motion in his back." He indicated that he was no longer able to run due to his back, but he could bike for exercise. He reported frequent need to stretch and that he had been missing three to four days per year due to his back pain. 

The examiner noted that the Veteran was limited in his ability to bend and lift, carry and do repetitive actions with his back. His ability to sit for extended periods of time was also limited. Forward flexion was from 0 degrees to 45 degrees and extension was reported from 0 degrees to 10 degrees. He had tenderness over the lumbar spine and the right SI joint. It was noted that the Veteran's pain level after repetitive use testing prevented him from trying to repeat the movements. The examiner noted that the Veteran had less movement than normal due to ankylosis. Particularly, a CT scan documented that the Veteran had diffuse idiopathic spinal hyperostosis (DISH), which was described by the examiner as a unique type of arthritis of the spine that results in ossification of the disc ligaments causing fusion of the spinal segments. This condition had resulted in ankylosis of some of the thoracic spine but it did not completely involving all 12 segments. It was noted that the Veteran uses a corset type of brace when doing physical labor, and he uses a cane on a bad days. 

Disability ratings are determined by applying criteria set forth in VA's Schedule for Rating Disabilities. Ratings are based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

In determining a disability evaluation, VA has a duty to consider all possible regulations which may be potentially applicable based upon the assertions and issues raised in the record. Where there is a question as to which of two evaluations should be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. When, after careful consideration of all the obtainable information, a reasonable doubt arises regarding the degree of disability doubt will be resolved in favor of the veteran. See 38 C.F.R. § 4.3. 

Where the appellant has expressed dissatisfaction with the assignment of an initial rating following an initial award of service connection for that disability, separate ratings can be assigned for separate periods of time based on the facts found, a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999). 
Here, the Board finds that the evidence does not suggest that the functional impairment related to the Veteran's low back disability has significantly changed during the appeal period and a uniform evaluation is warranted. 

When evaluating disabilities of the musculoskeletal system, 38 C.F.R. § 4.40 allows for consideration of functional loss due to pain and weakness causing additional disability beyond that reflected on range-of-motion measurements. DeLuca v. Brown, 8 Vet. App. 202 (1995). The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated innervation, or other pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40. Pain on movement, swelling, deformity or atrophy of disuse as well as instability of station, disturbance of locomotion, interference with sitting, standing and weight bearing are relevant considerations for determination of joint disabilities. 38 C.F.R. § 4.45 (2015). Further, 38 C.F.R. § 4.45 provides that consideration also be given to decreased movement, weakened movement, excess fatigability, incoordination, and pain on movement, swelling, and deformity or atrophy of disuse. Painful motion is considered limited motion at the point that the pain actually sets in. See VAOPGCPREC 9-98.

Although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011); cf. Powell v. West, 13 Vet. App. 31, 34 (1999); Hicks v. Brown, 8 Vet. App. 417, 421 (1995); Schafrath v. Derwinski, 1 Vet. App. 589, 592 (1991). Pursuant to 38 C.F.R. §§ 4.40 and 4.45, the possible manifestations of functional loss include decreased or abnormal excursion, strength, speed, coordination, or endurance (38 C.F.R. §§ 4.40), as well as less or more movement than is normal, weakened movement, excess fatigability, and pain on movement (as well as swelling, deformity, and atrophy) that affects stability, standing, and weight-bearing (38 C.F.R. § 4.45). Thus, functional loss caused by pain must be rated at the same level as if the functional loss were caused by any of the other factors cited above. Therefore, in rating the severity of a joint disability, VA must determine the overall functional impairment due to these factors. When rating spine disabilities, the Board must also discuss any additional limitation of motion that a Veteran has due to pain, weakness, or fatigue. See Cullen v. Shinseki, 24 Vet. App. 74, 85 (2011). 

The Veteran's low back disability is evaluated under Diagnostic Code 5242, degenerative arthritis of the spine, which is evaluated using the General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula). Under this formula, a 10 percent evaluation is warranted when forward flexion of the thoracolumbar spine is greater than 60 degrees but not greater than 85 degrees; or, or, the combined range of motion of the thoracolumbar spine is greater than 120 degrees but not greater than 235 degrees; or, there is muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, there is vertebral body fracture with loss of 50 percent or more of the height. 38 C.F.R. § 4.71a (2015). 

A 20 percent evaluation is warranted when the forward flexion of the thoracolumbar spine is greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or, there is muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. The criteria for a 30 percent evaluation pertain only to the cervical spine and are not applicable in this case. 

A 40 percent evaluation is warranted when forward flexion of the thoracolumbar spine is 30 degrees or less; or, there is favorable ankylosis of the entire thoracolumbar spine. Id. 

A 50 percent evaluation is warranted when there is unfavorable ankylosis of the entire thoracolumbar spine. Id. 

The criteria under the General Rating Formula are to be applied with or without symptoms of pain (whether or not it radiates), aching, or stiffness in the area of the spine involved. Id. Because the rating criteria are based upon limitation of motion, additional functional loss must be considered. DeLuca, 8 Vet. App. at 206. 

In addition to the General Rating Formula, a Veteran suffering from intervertebral disc syndrome may also be evaluated under the Formula for Rating Intervertebral Disc Syndrome (IVDS), whichever rating formula results in a higher rating. See 38 C.F.R. § 4.71a, DC 5243. IVDS is evaluated either on the total duration of incapacitating episodes over the past 12 months or by the Veteran's evaluation under the General Rating Formula combined with separate evaluations of its chronic orthopedic and neurologic manifestations along with evaluations for all other disabilities, as described under 38 C.F.R. § 4.25. See 38 C.F.R. § 4.71a, Diagnostic Code 5243, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. 

The IVDS provides that a 10 percent evaluation is warranted when the veteran has incapacitating episodes having a total duration of at least one week but less than two weeks during the past 12 months. Id. 

A 20 percent evaluation is warranted when the veteran has incapacitating episodes having a total duration of a least 2 weeks but less than 4 weeks during the past 12 months. Id. 

A 40 percent evaluation is warranted when the Veteran has incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. Id. 

A 60 percent evaluation is warranted when the Veteran has incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. Id. 

An incapacitating episode is "a period of acute signs and symptoms due to intervertebral disc syndrome that require bed rest prescribed by a physician and treatment by a physician." 38 C.F.R. § 4.71a, Diagnostic Code 5243, formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, Note (1). 

After considering all of the evidence of record, the Board finds that a 40 percent rating is warranted throughout the appeal period. See Fenderson. While the Veteran does report a worsening of his condition in August 2008 and reported that his back had deteriorated in February 2015, the Board finds that the level functional impairment demonstrated by the Veteran more closely reflected that of the 40 percent rating criteria throughout the period on appeal. Particularly, while the Veteran demonstrated initial forward flexion of the lumbar spine to 95 degrees during his 2006 VA examination and forward flexion to 80 degrees during his 2011 VA examination, the Veteran demonstrated increased functional limitation upon repetitive use of his back that more nearly approximates the 40 percent criteria under DC 5242. 

During his examination, the Veteran reported that his condition could start with mild symptoms and then change into periods of very sharp and stabbing pain. While the examiner indicated that the Veteran had preserved range of motion to 95 degrees of forward flexion in 2006, it was also stated that the Veteran slowed down his pace and appeared to be having much more trouble going through the preserved range of motion due to pain and lack of endurance on repetitive motion. Resolving the benefit of the doubt in favor of the Veteran, the Board finds that these additional limitations due to loss of functional capacity upon repetitive motion and due to flare-ups, more closely represents limitation forward flexion of the thoracolumbar spine is 30 degrees or less. 

However, the Board finds that the evidence does not more nearly reflect unfavorable ankylosis of the thoracolumbar spine or unfavorable ankylosis of the entire spine during the period prior to February 12, 2015. The evidence throughout the period does not indicate (and the Veteran has not reported) that his condition has left him with no ability to perform forward flexion, even upon repetitive motion. During his VA examination in February 12, 2015, he reported feeling that was "losing" motion in his back, but he did not indicate that he had lost all motion in his back. While the Veteran was noted in this examination to have DISH that was causing ankylosis of his lumbar spine over time, he did not have full ankylosis of the lumbar spine at this time. The examiner stated that the Veteran had "ankylosis of some of the thoracic spine but it did not involve all 12 segments." Since the Veteran indicated he still had some motion of the spine in February 2015 and prior radiologic evaluations (an x-ray in October 2003 and a September 2009 MRI) did not report evidence of ankylosis of the Veteran's lumbar spine, the Board finds that the Veteran's condition during the appeal period did not more closely approximate unfavorable ankylosis of the thoracolumbar spine or unfavorable ankylosis of the entire spine. Accordingly, a 50 percent or 100 percent rating under the General Formula is not warranted prior to February 12, 2015. 38 C.F.R. §§ 4.3, 4.71a, DC 5242 (2015).

The Board also finds that a higher 60 percent rating is not warranted under the IDVS. To the extent that the Veteran has demonstrated intervertebral disc syndrome, the Board notes that the Veteran never indicated suffering incapacitating episodes of least 6 weeks during any 12 month period on appeal. During his examination in 2006, the Veteran reported missing approximately 20 to 24 days of work since approximately 2002, which would be less than 6 weeks over the course of the four year period described. Even assuming that the Veteran's monthly flare-ups resulted in prescribed bed rest, this would still not more closely represent a 6 weeks of incapacitating episodes during any 12 month period. During his 2015 examination, the Veteran reported missing 3-5 days of work per year, which also would not reflect incapacitating episodes that meet the 60 percent criteria under the IVDS. Accordingly, the Board finds that a higher rating of 60 percent is not warranted under the IDVS. 

Extraschedular Consideration

The Board finds that this case should not be referred to the Director of the VA Compensation and Pension Service for extraschedular consideration under 38 C.F.R. § 3.321(b). Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, there must be a comparison between the level of severity and symptomatology of the Veteran's service-connected disability and the established criteria found in the rating schedule to determine whether the Veteran's disability picture is adequately contemplated by the rating schedule. See Thun v. Peake, 22 Vet. App. 111 (2008). If not, the second step is to determine whether the Veteran's exceptional disability picture exhibits other related factors identified in the regulations as "governing norms." Id.; see also 38 C.F.R. § 3.321(b)(1) (governing norms include marked interference with employment and frequent periods of hospitalization). If the factors of step two are found to exist, the third step is to refer the case to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for a determination concerning whether, to accord justice, the Veteran's disability picture requires the assignment of an extra- schedular rating. Id. 

The Board recognizes that the Veteran has reported functional impairment such as not being able to participate in activities that he once enjoyed, missed days of work, and flare-ups that require him to lie down and rest for extended period of time. These flare-ups have resulted in the Veteran missing approximately three to five days of work per year, and approximately 20-24 days in a period between 2002 and 2006. The Board notes that the assigned 40 percent rating reflects that the Veteran's disability is productive of impairment in earning capacity; however, the record does not reflect that the average industrial impairment from his disability would be in excess of that contemplated by the assigned rating. The Veteran's low back disability has been found to be manifested by pain that limits his motion, and that increased loss of function is shown with repetitive use due to pain and lack of endurance. Such manifestations are reasonably contemplated by the schedular criteria for a 40 percent rating under DC 5242, and the General Formula, which, in combination with the criteria of 38 C.F.R. §§ 4.45, 4.59, and Deluca, which contemplate back disability productive of limited forward flexion of the thoracolumbar spine, painful motion, increased loss of function due to repetitive use, and additional limitations due to flare-ups. As the Veteran's symptoms have been contemplated by the rating schedule, referral of the claim for extraschedular consideration is not warranted.

Additionally, the Board finds that missing approximately three to five days of work per year does not rise to the level of marked interference with employment. Accordingly, even to the extent that the Veteran's symptoms have not been contemplated by the rating schedule, his symptoms have not caused such severe functional impairment as to violate the governing norms. Therefore, referral of the claim for extraschedular consideration is not warranted.

Accordingly, for the period prior to February 12, 2015, an initial disability rating of 40 percent, but not in excess of 40 percent, for a low back disability is warranted. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3 (2015). 

Duties to Notify and Assist

VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002, 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015). The award of service connection for August 2006 represented a substantiation of the Veteran's original claim, and thus the filing of a notice of disagreement with the assigned rating did not trigger additional 38 U.S.C.A. § 5103(a) notice requirements. Therefore, any defect as to notice is not prejudicial. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006); Dunlap v. Nicholson, 21 Vet. App. 112 (2007); see also Goodwin v. Peake, 22 Vet. App. 128, 134 (2008) (where a claim has been substantiated after the enactment of the VCAA, the appellant bears the burden of demonstrating any prejudice from defective VCAA notice with respect to any downstream elements). Moreover, the Veteran was notified of regulations pertinent to the establishment of a disability rating and an effective date in letters sent in February 2006 and January 2015. See Dingess, 19 Vet. App. at 478. Hence, the Veteran is not shown to be prejudiced.

The Veteran's service treatment records, VA medical treatment records, and identified private medical records have been obtained. The Veteran was also provided VA examinations in March 2006, May 2011, and February 2015. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2015). These examinations and associated reports were adequate because, together, they provided sufficient information to decide the appeal and were provided by examiners with appropriate expertise. 38 C.F.R. § 3.159(c)(4) (2015); Barr v Nicholson, 21 Vet. App. 303 (2007). To the extent that these examinations have not adequately discussed the March 2006 examiner's finding that the Veteran had increased functional loss due to reduced speed and increased "trouble going through the preserved range of motion due to pain and lack of endurance," the Board notes that the criteria for a higher rating of 50 or 100 under the rating schedule primarily consider whether the Veteran's condition results in unfavorable ankylosis of the entire spine or unfavorable ankylosis of the thoracolumbar spine; accordingly, any failure to adequately discuss the Veteran's increased functional loss upon repetitive motion is not prejudicial to the Veteran. 

All obtainable evidence identified by the Veteran relative to his claims have been obtained and associated with the claims file, and the Board is not aware of the existence of any additional relevant evidence which was not obtained. Therefore, no further assistance to the Veteran with the development of evidence is required. 38 U.S.C.A. § 5103A(a)(2); 38 C.F.R. § 3.159(d); see Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006).

ORDER

For the period prior to February 12, 2015, an initial disability rating of 40 percent, but not in excess of 40 percent, for a low back disability is granted. 

____________________________________________
K. PARAKKAL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs